UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAG-DOLPHUS, INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-1525 |
| | § | |
| OHIO CASUALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | | |

## OPINION AND ORDER

Pending before the Court is Defendant Ohio Casualty Insurance Company's[1] ("Ohio") motion for summary judgment. Doc. 17. Defendant moves for summary judgment of Plaintiffs', Mag-Dolphus, Inc.'s, and its owners, Gerald and Jan Maggard's, claims on the grounds that Plaintiffs' invocation of the appraisal provision in the insurance contract ("the Policy") and Defendant's prompt compliance with the appraisal provision preclude Plaintiffs' claims as a matter of law. Doc. 17 at 2.

After considering Defendant's motion for summary judgment, the facts of this case, and the applicable law, the Court finds Plaintiffs' invocation of the appraisal provision precludes Plaintiffs' claims as a matter of law and the uncontested facts in this case fail to support Plaintiffs' claims against Defendant. The Court therefore finds that Defendant's motion for summary judgment should be granted.

## Background

---

[1] Plaintiff originally named America First Insurance Company as the Defendant in this action. Ohio Casualty responded and asserted that it was the appropriate Defendant. Plaintiff did not dispute Ohio Casualty's assertion. The Court ordered Ohio Casualty to file a motion to substitute and gave Plaintiff ten days to notify the Court if it opposed Defendant's motion. Doc. 23. Defendant filed a motion to substitute (Doc. 24) and Plaintiff has not responded. By a separate order entered today, the Court granted Ohio Casualty's motion to substitute.

Plaintiffs own an office building at 3006 Sawdust Road, The Woodlands, TX. 77380-2607.[2] Doc. 1-1 at 5. On May 26, 2008, Plaintiffs obtained an insurance policy from Defendant, covering Plaintiffs' business property. Doc. 17-2. On September 13, 2008, Hurricane Ike struck Texas, causing damage to Plaintiffs' building and outdoor sign. Doc. 1-1 at 5. On the same day, Plaintiffs filed an insurance claim for the damages to the property. Doc. 1-1 at 5; Doc. 20 at 2.

On September 29, eleven business days after Defendant received notice of the loss, its independent adjuster inspected the property. Doc. 17 at 2; Doc. 17-1 at 1. In his loss report, Defendant's independent adjustor estimated the total claim value to be $40,331.48. Doc. 17-3 at 2; Doc. 17-4. The total claim value consisted of an initial $23,145.22, which reflected the cash value portion of the repairs to the building and outdoor sign less a $500.00 deductible, and an additional $17,186.26, which Defendant would pay in the event that Plaintiffs made actual repairs or replacements on the building and sign. Doc. 17-3 at 2; Doc. 17-4.

On November 6, twenty-eight business days after Defendant's adjuster inspected Plaintiffs' property, Defendant sent Plaintiffs a claim acceptance letter notifying Plaintiffs of the damage amount and a check for $23,145.22. Doc. 20 at 2; Doc. 17 at 2; Doc. 17-4. In the letter, Defendant explained that for Plaintiffs to collect the remaining balance of $17,186.26, the terms of the Policy required that Plaintiffs first make the actual building and sign repairs or replacements and then submit any pertinent documentation to verify the completion of the repairs. Doc. 17-4; *see* Doc. 17-3 at 2.

Although Plaintiffs do not state as much, it appears that Plaintiffs disputed Defendant's estimate of the compensation. *See* Doc. 1-1 at 6-7. On January 29 and February 4, 2009, presumably in response to Plaintiffs' dispute of the amount of covered loss, Defendant re-

---

[2] Defendant contends that Plaintiff Mag-Dolphus, Inc. was the only named insured on the Policy and the only insured making a claim under the Policy.

inspected Plaintiffs' property to determine whether damages to the building were hurricane-related or originated from non-hurricane issues. Doc. 17 at 2; Doc. 17-5; Doc. 17-6. Defendant found both hurricane-related and non-hurricane-related damage. Doc. 17-5. Nothing in the record indicates that Defendant's loss valuation changed. *See* Doc. 17-5; Doc. 17-6. On June 18, Plaintiffs informed Defendant that they disagreed with Defendant's appraisal, and Plaintiffs invoked the Policy's appraisal provision.[3] Doc. 20 at 2; Doc. 17 at 7; Doc. 17-1 at 2; Doc. 17-7; Doc. 17-8.

The parties each selected independent appraisers who submitted estimates of the amount of covered loss. *See* Doc. 17-1 at 2; Doc. 17-7; Doc. 17-8; Doc. 17-2 at 69. The two appraisers did not agree and they subsequently selected an umpire, as required by the Policy. *See* Doc. 17-1 at 2; Doc. 17-7; Doc. 17-8; Doc. 17-2 at 69. On January 22, 2010, the umpire awarded Plaintiffs $191,594.16 in replacement costs, less depreciation, previous payments, and deductibles. Doc. 20 at 2; Doc. 17 at 7; Doc. 17-1 at 2; Doc. 17-9.  Neither the Policy's appraisal clause nor the umpire award letter specified a deadline by which Defendant must pay the appraisal award. *See* Doc. 17-2 at 69; Doc. 17-9.

On February 11, 2010, Defendant sent Plaintiffs a notice of payment and a check for $99,547.44, which Defendant stated was the amount due for the property damage claim based on the appraisal, less the amounts already paid and the deductible. Doc. 20 at 2; Doc. 17-1 at 2; Doc. 17-10. On March 25, Defendant sent Plaintiffs a second notice of payment and a check for $52,759.81, which Defendant stated was for "the recoverable depreciation on the repairs to [the]

---

[3] The Policy's appraisal provision provides that if the insured and insurer disagree on the amount of loss, either party may make a written demand for an appraisal of the loss. Doc. 17-2 at 69. Each party selects a competent and impartial appraiser, and the parties' appraisers select an umpire. *Id*. If the appraisers fail to agree on the amount of loss, they submit their estimates to the umpire. *Id*. "A decision agreed to by any two will be binding as to the amount of loss." *Id.* The Policy's appraisal provision does not provide a deadline by which the insurer must respond to an insured's request for appraisal. *See* Doc. 17-2 at 69.

building" due under the Policy's terms. Doc. 20 at 2; Doc. 17-1 at 2; Doc. 17-11.

Nevertheless, on September 13, 2010, Plaintiffs filed their original petition in the 359th District Court for Montgomery County. No. 10-09-09948-CV. *See* Doc. 1-1. In their petition, Plaintiffs asserted a claim for breach of contract and extra-contractual claims for common law and statutory breach of the duty of good faith and fair dealing, for common law fraud, and for failure to promptly pay claims under the Texas Insurance Code. Doc 1-1 at 9. On April 20, Defendant removed the case to this Court on grounds of the Court's diversity jurisdiction pursuant to 28 U.S.C. §1332. Doc. 1.

Defendant now has moved for summary judgment of Plaintiffs' claims on the grounds that Plaintiffs' invocation of the appraisal provision and Defendant's prompt compliance therewith preclude Plaintiffs' claims as a matter of law.[4] Doc. 17.

Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial

---

[4] Prior to filing a motion for summary judgment, Defendant also filed a motion for partial dismissal of Plaintiffs' extra-contractual claims. Doc. 15. Because this case is now ripe for adjudication at the summary judgment stage, the motion for partial dismissal is moot.

burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

<u>Analysis</u>

Plaintiffs have asserted claims for breach of contract, for common law breach of the duty of good faith and fair dealing, for statutory breach of the duty of good faith and fair dealing under the Texas Insurance Code's unfair settlement practices, for common law fraud, and for failure to promptly pay claims under the Texas Insurance Code. Doc 1-1 at 9-12. Defendant has moved for summary judgment on Plaintiffs' breach of contract claim on the grounds that the

claim fails as a matter of law because Plaintiffs invoked the appraisal provision in the Policy and accepted the subsequent claims award. Doc. 17 at 4. In addition, Defendant seeks summary judgment of Plaintiffs' extra-contractual claims on the grounds that the claims cannot stand as a matter of law when the breach of contract claim fails. Doc. 17 at 5.

### A. Breach of Contract Claim

Plaintiffs have asserted a breach of contract claim based on Defendant's refusal to pay "adequate compensation" as required under the Policy's terms. Doc. 1-1 at 9. "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts that payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against "the insurer."' *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, No. H-09-3479, 2011 WL 819491, at *3 (S.D. Tex. March 2, 2011) (quoting *Franco v. Slavonic Mutl. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Breshears v. State Farm Lloyd's*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, no pet.) (an insured "may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal").

Here, the parties do not dispute that Plaintiffs accepted the appraisal award after the award was issued. Doc. 20 at 2; Doc 17 at 3. Plaintiffs claim, nevertheless, that Defendant failed to pay adequate compensation as obligated under the terms of the Policy. Doc 1-1 at 9. Plaintiffs have failed to introduce evidence indicating that it was not adequately compensated. After both parties' independent appraisers could not agree on the proper value of the damage, the parties selected an umpire, as required by the Policy. Doc. 17-1 at 2; *see* Doc. 17-2 at 69. The umpire awarded Plaintiffs $191,594.16 in replacement costs, less depreciation, previous payments and

deductibles, as provided for by the Policy. Doc. 20 at 2; Doc. 17 at 7; Doc. 17-1 at 2; Doc. 17-9. Defendant subsequently paid that award on February 11 and March 25, 2010. Doc. 20 at 2; Doc. 17-1 at 2; Doc. 17-10; Doc. 17-11.

Plaintiffs have not asserted, nor does the record reflect, that Plaintiffs did not receive Defendant's check or that Plaintiffs declined to accept and deposit Defendant's payments. *See* Doc. 20 at 2; Doc. 17-10; Doc. 17-11. Plaintiffs, having accepted timely payment of the binding and enforceable appraisal award, are thus estopped from maintaining a breach of contract claim against Defendant. Defendant's motion for summary judgment on Plaintiffs' breach of contract claim is therefore granted.

### B. Extra-Contractual Claims

In addition to their breach of contract claim, Plaintiffs assert extra-contractual claims for common law breach of the duty of good faith and fair dealing, for statutory breach of the duty of good faith and fair dealing under the Texas Insurance Code's unfair settlement practices, common law fraud, and for failure to promptly pay claims under the Texas Insurance Code. Doc. 1-1 at 9. Defendant moves for summary judgment on the grounds that Plaintiffs' extra-contractual claims are founded upon Plaintiffs' failed breach of contract claim, and, thus, cannot prevail as a matter of law. Doc. 17 at 7.

### i. Common Law and Statutory Bad Faith Claims

Plaintiffs assert common law and statutory breaches of the duty of good faith and fair dealing based on Defendant's knowing "fail[ure] to adequately and reasonably investigate and evaluate Plaintiffs' claim," when "Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear." Doc. 1-1 at 11; Doc. 20 at 9-11. Doc.

1-1 at 10-11; Doc. 20 at 11-13.

Plaintiffs argue that Defendant breached its common law duty of good faith and fair dealing by delaying payment of Plaintiffs' claim after its liability had become reasonably clear. Doc. 20 at 10-11. Plaintiffs base their statutory bad faith claims on violations of the Texas Insurance Code Unfair Settlement Practices provisions. Doc. 1-1 at 10-11; *see* TEX. INS. CODE ANN. § 541.060(a)(1-4, 7) (West 2003). First, Plaintiffs allege that Defendants misrepresented material facts relating to Plaintiffs' insurance coverage in violation of §541.060(a)(1). *Id.* Second, Plaintiffs allege that Defendant failed to attempt in good faith to effectuate a prompt and fair settlement of the claim when Defendant's liability became reasonably clear, in violation of §541.060(a)(2)(A). *Id.* Third, Plaintiffs claim that Defendant failed to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy for the insurer's denial of a claim or offer of a compromise settlement of a claim in violation of §541.060(a)(3). *Id.* Fourth, Plaintiffs argue that Defendant failed within a reasonable time to affirm or deny coverage of the claim, or to submit a reservation of rights to Plaintiffs in violation of §541.060(a)(4)(A) and (B). *Id.* Fifth, Defendant refused to pay Plaintiffs' claim without conducting a reasonable investigation, in violation of §541.060(a)(7). *Id.* Defendant seeks summary judgment of Plaintiffs' common law and statutory bad faith claims, asserting that these claims cannot stand when the breach of contract claim fails. Doc. 17 at 5.

"Generally, an insured cannot maintain a common law bad faith claim where the breach of contract claim fails." *Blum's Furniture Co.*, 2011 WL 819491, at *3 (citing *Republic Insurance Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Toonen v. United Svcs. Auto. Ass'n*, 935 S.W.2d 937, 941 (Tex. App.—San Antonio 1996, no writ). "The only recognized exceptions to this rule are if the insurer 'commit[s] some act, so extreme, that would cause injury

independent of the policy claim,' or fails to timely investigate the insured's claim.'" *Stoker*, 903 S.W.2d at 341. Liability under §541 of the Texas Insurance Code is reviewed under the "same standard as a common law bad faith claim." *Blum's Furniture Co.,* 2011 WL 819491, at *4 (citing *Texas Mut. Ins. Co. v. Sara Care Child Care Str., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied); *Spicewood Summit Office Condominiums Ass'n, Inc. v. Amer. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.—Austin 2009, review denied); *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 544 (S.D. Tex. 1999) (holding that "when an insured joins claims under the Texas Insurance Code . . . with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims." (citing *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)).

Because Plaintiffs' breach of contract claim fails, in order to prevail on their common law and statutory bad faith claims, Plaintiffs must raise a genuine issue of material fact that Defendant "commit[ted] some act, so extreme, that would cause injury independent of the policy claim" or "fail[ed] to timely investigate . . . [Plaintiffs'] claim." *Stoker*, 903 S.W.2d at 341. With regard to the first exception, Plaintiffs have provided no evidence of an act so extreme that it caused injury independent of the Policy claims. *See* Doc. 1-1; Doc. 20. To the contrary, the evidence before the Court only indicates that on November 6, twenty-eight business days after Defendant's adjuster inspected Plaintiffs' property, Defendant sent Plaintiffs an initial payment of $23,145.22 (Doc. 17 at 2; Doc. 17-1 at 1; Doc. 17-3 at 2; Doc. 17-4), which Plaintiffs contend undervalued their loss (Doc. 1-1 at 6-7).

Plaintiffs' claim appears to be premised on their dispute of their property's loss valuation. *See* Doc. 20 at 10-11; Doc. 17 at 5. Plaintiffs' insurance policy, however, contained an appraisal

provision providing Plaintiffs a means for disputing and negotiating the amount of loss, which Plaintiffs invoked by making a written demand for an appraisal of the loss. Doc. 17 at 6; Doc. 17-2 at 69. Further, Plaintiffs negotiated and accepted the appraisal award. Doc. 20 at 2; *see* Doc. 17-9; Doc. 17-10; Doc. 17-11. Defendant's initial payment may have seemed insufficient to Plaintiffs, but nothing before the Court indicates that this was an act so extreme that it caused injury independent of the Policy claims. *See* Doc. 1-1; Doc. 20.

Nor does the record indicate that the second exception, failure to timely investigate the insured's claim, applies here. *See* Doc. 1-1 at 9-11; Doc. 20 at 11-14. The Texas Insurance Code requires that after an insurer receives notice of a claim, "the insurer shall, within fifteen business days, acknowledge receipt of the claim, commence any investigation of the claim, and request all items and forms "that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE ANN. § 542.055(a)(1-3).

The Texas Insurance Code provides, however, that "in the event of a weather-related catastrophe or major natural disaster, as defined by the commissioner [of the Texas Department of Insurance], the claim-handling deadlines imposed under this subchapter are extended for an additional 15 days." TEX. INS. CODE ANN. § 542.059(b). After Hurricane Ike, the Commissioner of Insurance issued Bulletin #B-0066-08, determining that Hurricane Ike "is a catastrophe for the purpose of claims processing," and that the claims processing resulting from the hurricane was subject to the "additional time periods allowed by Section 542.059, Texas Insurance Code." Doc. 21-1 at 1.

Here, the summary judgment evidence before the Court indicates that on September 29, eleven business days after Plaintiffs submitted their notice of loss, Defendant commenced investigation of the claim by sending its independent adjuster to inspect the property. Doc. 17 at

2; Doc. 17-1 at 1. Defendant commenced investigation of Plaintiffs' claim within the fifteen-business day requirement, and certainly within the thirty-day period following a weather-related catastrophe. Although Defendant made two subsequent investigations of Plaintiffs' property on January 29, 2009 and February 4, 2009, well after Plaintiffs' initial notice of loss, these investigations presumably took place in response to Plaintiffs' dispute of the amount of covered loss. *See* Doc. 17 at 2; Doc. 17-5; Doc. 17-6. Plaintiffs have not provided the date on which they informed Defendant of their dispute, nor have Plaintiffs identified any provision of the Texas Insurance Code which controls the time limit in which an insurance company must conduct a second investigation. *See* Doc. 1-1; Doc. 20. Plaintiffs, therefore, have failed to show that Defendant untimely investigated Plaintiffs' claim.

Plaintiffs allege that Defendant did not acknowledge receipt of Plaintiffs' claim and request items and forms from Plaintiffs to properly adjust the claim, as required by the Texas Insurance Code under §542.055. Doc. 1-1 at 11. Defendant acknowledged receipt of the claim by sending its independent adjuster to investigate Plaintiffs' building within eleven business days after receiving Plaintiffs' notice of loss. Doc. 17 at 2; Doc. 17-1 at 1. Plaintiffs have not identified any items or forms that Defendant failed to request within this time period. *See* Doc. 1-1; Doc. 20. Furthermore, within twenty-eight business days of investigating Plaintiffs' notice of loss, Defendant sent Plaintiffs a check for the initial appraisal amount. Doc. 20 at 2. Nothing in the record indicates that Defendant failed timely to acknowledge receipt of Plaintiffs' claims or request items and forms from Plaintiffs.

Because Plaintiffs' breach of contract claim fails, and because Plaintiffs have failed to show that Defendant either committed some act so extreme that it would cause injury apart from the Policy claim or failed timely to investigate Plaintiffs' claim, Defendant is entitled to

summary judgment on Plaintiffs' common law and statutory bad faith claims.

### ii. Fraud Claim

Plaintiffs assert claims for common law fraud based on Defendant's knowing misrepresentation of the Policy's terms when Defendant informed Plaintiffs that "the damage to the [p]roperty was not covered under the Policy, even though the damage was caused by a covered occurrence." Doc. 1-1 at 6, 9.

Under Texas law, Plaintiffs must show a genuine issue of material fact as to the following elements in order to survive a motion for summary judgment on their claim for common law fraud: "(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Although Plaintiffs included an allegation of fraud in their complaint, Plaintiffs appear to have abandoned this claim in their subsequent pleadings. Plaintiffs have not responded to Defendant's arguments against the fraud claim, nor have Plaintiffs introduced any evidence in support thereof. *See* Doc. 20.

To the extent that Plaintiffs wish to maintain their claim for fraud, they have not introduced any evidence of a material misrepresentation in the record. *See* Doc. 11; Doc. 20. Plaintiffs have not identified the manner of Defendant's misrepresentation nor identified what Defendant said was the uncovered occurrence. *See* Doc. 11; Doc. 20. Plaintiffs fail to point to

any of Defendant's specific statements which misrepresented the Policy's terms; nor have Plaintiffs identified damage to their building caused by Hurricane Ike that Defendants misrepresented as not caused by the hurricane or otherwise covered under the Policy. *See* Doc. 1-1; Doc. 20.

To the extent that Defendants did make a material misrepresentation, Plaintiffs have failed to demonstrate that they relied thereon. To the contrary, Plaintiffs have alleged that in response to Defendant's initial valuation of Plaintiffs' damaged property, Plaintiffs contested the valuation and subsequently invoked the appraisal provision in their insurance policy. Plaintiffs' own allegations belie their fraud claim and indicate only that Plaintiffs contested or disagreed with such purported misrepresentations.

Because Plaintiffs have failed to carry their burden for their fraud claim, the Court grants Defendant's motion for summary judgment on this claim.

### iii. Failure to Promptly Pay Claim

Plaintiffs assert a claim for violation of the Texas Insurance Code's prompt payment of claims requirements based on Defendant's failure to promptly pay Plaintiffs' claim, failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and request all necessary documents within fifteen business days, failure to notify Plaintiffs of its acceptance of the claim within fifteen business days after receiving all necessary documents, and failure to pay the claim within five business days after sending notice of acceptance. Doc. 1-1 at 7, 11; Doc. 20 at 2, 15-16.

The purpose of §542 is to obtain prompt payment of claims pursuant to policies of insurance, and its provisions are to be liberally construed to promote this purpose. TEX. INS. CODE ANN. § 542.054. If an insurer delays payment of a claim after receiving "all items,

statements, and forms reasonably requested and required" for more than sixty days, the insurer "shall pay damages and other items as provided for in §542.060." *Id.* § 542.058.

In addition, an insurer must, within fifteen business days after receiving a claim, commence investigation, request documentation that the insurer reasonably believes will be required from the claimant, and acknowledge receipt of the claim. TEX. INS. CODE ANN. § 542.055(a). If the insurer does not acknowledge receipt of the claim in writing, the insurer "shall make a record of the date, manner, and content of the acknowledgment." *Id.* § 542.055(c). Further, the insurer must notify the claimant in writing of the acceptance or rejection of the claim within fifteen days after it receives the required documentation for proof of loss. *Id.* § 542.056(a). Finally, the insurer must pay a claim within five business days after the insured gives the claimant notice that the claim, or part of the claim, will be paid. *Id.* § 542.057.

Plaintiffs allege that Defendant violated the Texas Insurance Code when it made the appraisal award payment over seventeen months after Hurricane Ike, well after the statute's sixty-day limit. Doc. 20 at 2; *see* TEX. INS. CODE ANN. § 542.058. Under Texas law, however, "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law." *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 556, 563-64; *see Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, *4 (Tex. App.—Houston [1st. Dist.] Aug. 9, 2007, no pet.) (mem. op.) (holding that "where insurer makes timely payment pursuant to an appraisal award, there is no violation of the code's prompt payment deadlines"); *Breshears*, 155 S.W.3d at 344-45 (holding that insurer did not breach contract and insureds were not entitled to payment of penalty fees, "even though final payment was delayed until completion of appraisal process").

Here, the parties do not dispute that on June 18, 2009, Plaintiffs invoked the appraisal

provision of the Policy. Doc. 20 at 2; Doc. 17 at 7; Doc. 17-1 at 2; Doc. 17-7; Doc. 17-8. The

parties also do not dispute that on January 22, 2010, the umpire issued a decision for

$191,594.16 (*see* Doc. 17-1 at 2; Doc. 17-7; Doc. 17-8; Doc. 17-2 at 69), which Defendant

subsequently paid (Doc. 20 at 2; Doc. 17-1 at 2; Doc. 17-10; Doc. 17-11) and Plaintiffs accepted

(*see* Doc. 20 at 2; Doc. 17-10; Doc. 17-11).

Plaintiffs are arguing, essentially, that "because of the appraisal process, they were not

actually paid until after [Defendant] paid them the difference between the first payment and the

appraisal award, which occurred long after the sixty-day statutory limit." *Breshears*, 155 S.W.3d

at 345 (rejecting similar timely payment claims based on delays caused by invocation of the

appraisal process). The summary judgment evidence before the Court, however, shows that

Defendant issued Plaintiffs their first check on November 6, 2008, twenty-eight business days

after Defendant's adjuster inspected Plaintiffs' property, and well within the time period required

by §542.058. Doc. 20 at 2; Doc. 17 at 2; Doc. 17-4. Plaintiffs' later invocation of the appraisal

process "does not alter the fact that [Defendant] complied with the insurance code, and provided

a reasonable payment within a reasonable time." *Breshears*, 155 S.W.3d at 345 (citing TEX. INS.

CODE ANN. §§ 542.056, 542.057, 542.058, 542.060, 542.054); *Waterhill Cos. Ltd. v. Great*

*American Assurance Co.*, No. 05-4080 CV, 2006 WL 696577 at *2 (S.D. Tex. March 16, 2006)

(holding that "when the appraisal clause is invoked, a delay in payment pursuant to the appraisal

process does not constitute a §542.058 violation").

Plaintiffs additionally claim that Defendant failed to commence timely investigation of

the claim, request all necessary items, statements, and forms that the Defendant reasonably

believed would be required from Plaintiffs, and acknowledge receipt of the claim within the time

limits imposed by the Texas Insurance Code. Document 1-1 at 11; Doc. 20 at 15-16; *see* TEX.

INS. CODE ANN. § 542.055(a)(1-3).

The record before the Court shows that Defendant received notice of Plaintiffs' claim on September 13, 2008 (Doc. 1-1 at 5; Doc. 20 at 2) and commenced its investigation eleven business days later when it sent an independent adjuster to inspect Plaintiffs' property within the fifteen business days required by the insurance code (Doc. 17 at 2; Doc. 17-1 at 1); *see* TEX. INS. CODE ANN. § 542.055 (a)(2) .  Further, Plaintiffs have not identified any items, statements or forms that Defendant needed to properly process the claim, nor have Plaintiffs shown that Defendant even required any items, statements or forms at all. *See* Doc. 1-1; Doc. 20. To the extent that Defendant required any documentation from Plaintiffs, Plaintiffs have failed to allege a single fact demonstrating that Defendant requested documents more than fifteen business days after Defendant received Plaintiffs' notice of loss. *See* Doc. 1-1; Doc. 20; *see* TEX. INS. CODE ANN. § 542.055 (a)(3).

Finally, although Defendant failed to provide a written acknowledgment of Plaintiffs' claim, Defendant undoubtedly acknowledged receipt of the claim within fifteen business days when it sent an adjuster to inspect Plaintiffs' building. Doc. 17-1; Doc. 17-3. The statute[5] provides that if the acknowledgment of the claim's receipt is not made in writing, the insurer "shall make a record of the date, manner, and content of the acknowledgment." TEX. INS. CODE ANN. § 542.055(c). Defendant subsequently generated a loss report in which Defendant's adjuster stated that he inspected Plaintiffs' building on September 29, thus recording the date, manner, and content of the in-person acknowledgment. Doc. 17-1; Doc. 17-3.

---

[5] The parties' insurance policy contract mirrors the language of §542.055(c): "(1) Claims Handling (a) Within 15 days after we receive written notice of claim, we will: (i) Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment; (ii) Begin any investigation of the claim; and (iii) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary."

Plaintiffs additionally contend that Defendant failed to notify Plaintiffs in writing of the acceptance or rejection of the claim within fifteen business days after Defendant received the required documentation for proof of loss.  Doc. 1-1 at 11; Doc. 20 at 15-16; *see* TEX. INS. CODE ANN. § 542.056. As previously discussed, however, the applicable time period is the thirty-day extension as granted by the Insurance Commissioner pursuant to the statute. Doc. 21-1 at 1; *see* TEX. INS. CODE ANN. § 542.059(b). Plaintiffs do not identify any date by which Defendant received required documentation for proof of loss, but Plaintiffs agree that Defendant sent Plaintiffs a notice of acceptance letter on November 6, twenty-eight business days after Defendant inspected Plaintiffs' property. Doc. 17-4. Although Plaintiffs subsequently disputed Defendant's valuation of this loss and invoked the contract's appraisal provision, nothing before the Court indicates that Defendant was untimely in its initial claim handling.

Likewise, Plaintiffs claim that Defendant failed to pay their claim within five business days after sending Plaintiffs the notice of loss. Doc. 20 at 15-16; *see* TEX. INS. CODE ANN. § 542.057. Plaintiffs agree, however, that Defendant sent a check for $23,145.22 on the same day as the notice of acceptance letter. Doc. 20 at 2; Doc. 17-1 at 2; Doc. 17-2 at 2; Doc. 17-10; Doc. 17-11.

Although Plaintiffs certainly were dissatisfied with Defendant's valuation of their claims, they have introduced no evidence to indicate Defendant's initial claim processing was untimely or inadequate in violation of the Texas Insurance Code. Because Plaintiffs' claims under the Texas Insurance Code are precluded by their successful invocation of the contract's appraisal provision, and because in the absence of that preclusion Plaintiffs have failed to introduce sufficient summary judgment evidence to support their claims under the insurance code, Defendant is entitled to summary judgment on these claims.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Defendant Ohio Casualty Insurance Company's motion (Doc. 17) for summary judgment is GRANTED.

SIGNED at Houston, Texas, this 12th day of September, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE